UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re: DOUGLAS R. ORKWIS and
      BARBARA E. ORKWIS,                          Chapter 13
                                                             Case No. 8-11-71909-reg

                        Debtor.
-----------------------------------------------------------------x
DOUGLAS R. ORKWIS and
      BARBARA E. ORKWIS,

                      Plaintiffs,

        -against-
                                                             Adv. Pro. No. 8-11-8935-reg
MERS as Nominee for Countrywide Home Loans, Inc.,
and BANK of AMERICA, as Servicer,

                      Defendants.
-----------------------------------------------------------------x

**MEMORANDUM DECISION**

       This matter is before the Court pursuant to an adversary proceeding filed by Douglas R. Orkwis and Barbara E. Orkwis (the "Debtors" or the "Plaintiffs") against MERS as Nominee for Countrywide Home Loans, Inc., and Bank of America, as Servicer (collectively, the "Defendant") seeking to avoid as wholly unsecured the Defendant's second mortgage lien encumbering the Debtors' residence (the "Property"). The Defendant defaulted in the adversary proceeding, and the Debtors request that the Defendant's mortgage lien be avoided upon entry of the judgment by default in favor of the Debtors, and that it not be conditioned upon entry of the Debtors' discharge. The Debtors argue that this Court's ruling in *In re Mulder,* No. 810-74217-reg, 2010 WL 4286174 (Bankr. E.D.N.Y., Oct. 26, 2010), that the avoidance of a judicial lien pursuant to § 522(f) of the Bankruptcy Code is not subject to the entry of a discharge, should

apply equally in an action to avoid a junior mortgage lien in a Chapter 13 case. The Court disagrees with the Debtors' analysis. As set forth in detail in *Mulder*, there is nothing in the Bankruptcy Code that conditions the granting of relief under § 522(f) to the entry of a debtor's discharge. However, the grant of relief in this adversary proceeding must be analyzed in the context of, and according to the relevant case law and statutes applicable to, the Chapter 13 plan process. Bankruptcy Code § 1322(b)(2) gives the Debtors the authority to modify the rights of the Defendant because the collateral securing the Defendant's claim is valued at "zero" pursuant to Bankruptcy Code § 506(a). As a result, the Defendant's claim is deemed "unsecured." This classification of the claim, however, is for the narrow purposes provided in Bankruptcy Code § 506(a), and not for all purposes in the case. The valuation does not in and of itself "avoid" any liens. It provides the statutory basis for the Court to value the claim and find that it is "unsecured" based on the lack of equity in the collateral to which the Defendant's lien can attach. In the Chapter 13 plan (the "Plan"), the Debtors then are permitted by statute to alter the rights of the lien holder and treat the Defendant's claim as unsecured. However, the mortgage lien held by the Defendant is not "stripped" as a result of Bankruptcy Code §§ 506(a) and 1322. The mortgage lien remains of record on the Property because Bankruptcy Code § 1325(a)(5), which must be satisfied in order to confirm the Plan, provides that unless the Defendant consents, or the Debtors surrender the Property to the Defendant, the Defendant's mortgage lien remains as a lien on the Property until payment of its claim in full under applicable non-bankruptcy law or entry of the Debtors' discharge. This Court disagrees with the line of cases holding that Bankruptcy Code § 1325(a)(5) is inapplicable to claims deemed "unsecured" pursuant to § 506(a). These cases endow § 506(a) with powers that simply does not exist as §

506(a) does not function as a lien stripping statute. Congress has consistently protected the rights of lien holders in the bankruptcy context, and any lien avoidance provisions in the Bankruptcy Code are specific and unambiguous, such as is found in Bankruptcy Code § 522(f). The Court also finds that the proper vehicle to obtain such relief is to file a motion pursuant to Fed. R. Bankr P. ("Bankruptcy Rule") 3012 to value the collateral securing the claim under § 506(a), and then to treat the claim as unsecured in the plan, as permitted by Bankruptcy Code § 1322(b)(2). Consistent with the Court's analysis, the lien is not "avoided" or "stripped down," but rather it is deemed satisfied based on compliance with Bankruptcy Code § 1325, and the lien may be removed from the Property of record upon entry of the discharge. Therefore, this Court will no longer entertain adversary proceedings by debtors seeking to avoid wholly unsecured second mortgage liens, and debtors shall seek such relief by way of a motion to value the collateral securing the mortgagee's claim pursuant to Bankruptcy Rule 3012 and Bankruptcy Code §§ 506(a) and 1322(b), and incorporate the treatment of the mortgagee's claim directly in the proposed plan.[1]

*Facts*

The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on March 25, 2011 (the "Petition Date"). The Property has an estimated value of $230,000.00 as of the Petition Date. The Property is encumbered by a first mortgage lien in the approximate amount of $235,828.00 as of the Petition Date. The Defendant holds the second mortgage lien and is owed approximately $235,828.00 as of the Petition Date. The Debtors commenced this adversary

---

[1]Any such adversary proceedings which are pending as of the date of this Memorandum Decision shall proceed, unaffected by the requirement that such relief be sought by motion and treatment of such unsecured claim in the proposed plan.

proceeding on April 21, 2011 to determine the secured status of the Defendant's mortgage lien, and to avoid the Defendant's mortgage lien to the extent it is wholly unsecured. The Defendants cite to Bankruptcy Code §§ 506(a) and (d) as the operative sections for relief under the complaint. In the complaint, the Debtors request that the Defendant's lien be declared void upon entry of a judgment in favor of the Debtors, and request that any claim filed by the Defendant with respect to the mortgage lien be reclassified as unsecured.

The Debtors filed a Plan providing that the Defendants' second mortgage lien "is to be avoided and crammed down." The summons and complaint in this adversary proceeding was served upon the Defendant, and the Defendant failed to file an answer or otherwise respond to the complaint. At the hearing on the adversary proceeding on June 1, 2011, the Court noted the Defendant's default and directed the Debtors to file a motion for default judgment. On June 7, 2011, the Debtors filed a motion for default judgment and the Defendant failed to respond. The Defendant failed to appear at the hearing on July 6, 2011, and at the adjourned hearing on July 14, 2011. At the hearing on July 14, 2011, the Court granted the relief requested in the motion for default judgment but reserved on the issue of whether the Defendant's lien could be avoided as of the date of entry of the judgment by default in the adversary proceeding.

The Court also confirmed the Debtors' Plan, which proposes to pay the Defendant and all unsecured creditors at least 1% over forty-eight months.

*Discussion*

Counsel to the Debtors argues that this Court should extend to the instant case its holding in *In re Mulder*, in which the Court held that relief under Bankruptcy Code § 522(f) is not dependent upon entry of the debtor's discharge and is effective upon entry of the order

granting such relief. According to the Debtors, it is logical to extend the reasoning of *In re Mulder*, which applies to non-consensual judicial liens, to the avoidance of wholly unsecured junior mortgage liens in Chapter 13 cases pursuant to §§ 506 and 1322, and there is no statutory basis to condition the actual avoidance of the mortgage lien upon entry of the Debtors' discharge.

In *In re Mulder*, this Court analyzed the language of Bankruptcy Code § 522(f) and concluded that there was nothing in this section which conditioned or linked the avoidance of a judicial lien which impairs the debtor's homestead exemption to the entry of the debtor's discharge. This Court also reviewed Bankruptcy Code § 349, which provides that dismissal of a case reinstates any lien avoided under section 522.[2] *In re Mulder,* 2010 WL 4286174 at *3, *4. This Court held that neither the language of § 522(f) nor the logistical problems created by the reinstatement of such liens upon dismissal of a case required that the debtor obtain a discharge prior to avoidance of the judicial lien. Furthermore, no other Bankruptcy Code sections impose any requirement or condition upon the avoidance of judicial liens under § 522(f). *In re Mulder,* 2010 WL 4286174 at *3 (*citing In re Ferrante,* No. 09-13098 JHW, 2009 WL 2971306 (Bankr. D.N.J. Sept. 10, 2009)). As a result, this Court concluded that § 522(f) is a free-standing lien avoidance statute.

---

[2]Section 349(b) provides:
(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
   (1) reinstates—
      (A) any proceeding or custodianship superseded under section 543 of this title;
      (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724 (a) of this title, or preserved under section 510 (c)(2), 522 (i)(2), or 551 of this title; and
      (C) any lien voided under section 506 (d) of this title

11 U.S.C. § 349(b).

In the case currently before the Court, the Debtors are seeking to avoid, or "strip off," a wholly unsecured junior mortgage lien and to pay a small percentage on the remaining unsecured claim, along with all of the Debtors' other unsecured creditors, pursuant to the Plan. While the Court's analysis in *In re Mulder* required a review of Bankruptcy Code §§ 522(f) and 349, the question before the Court in this case requires a more in-depth review of a host of Bankruptcy Code provisions. The proper starting point for this review is Bankruptcy Code § 506, which applies to cases under Chapters 7, 11, 12 and 13 of the Bankruptcy Code pursuant to Bankruptcy Code § 103.

>Section 506(a) provides, in relevant part:
>
>An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1). Section 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d).

A debtor may not strip liens in a Chapter 7 case, whether they are partially secured or wholly unsecured. In *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the Supreme Court ruled that a Chapter 7 debtor could not use § 506 to strip down the creditor's partially secured lien because the claim was secured by a lien and was fully allowed pursuant to § 502. The Supreme Court read § 506(d) to render a lien void only where the "claim" securing the lien was disallowed under Bankruptcy Code § 502. *Id*. As a result, § 506

(a) and/or (d) are powerless, either separately or jointly, to avoid liens in a Chapter 7 case. This Court believes that § 506(a), as analyzed in the context of this issue, fixes the value of the collateral to determine the status of a secured claim, and § 506(d) reports as to whether a lien is "void," but it does not actually avoid the lien.

The prohibition on lien stripping enunciated in *Dewsnup* extends to liens secured solely by a debtor's residence in Chapter 13 cases so long as there is any value in excess of the amount of a senior lien to which the junior lien can attach. The operative sections of the Code are contained in §§ 1322 and 1325.

11 U.S.C. § 1322(b)(2) provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may -
>     (2) modify the rights of holders of secured claims, other than a claim
>     secured only by a security interest in real property that is the debtor's
>     principal residence, or of holders of unsecured claims, or leave unaffected
>     the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

11 U.S.C. § 1325(a)(5) provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
>     *            *            *
>
> (5) with respect to each allowed secured claim provided for by the plan—
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that—
>     (I) the holder of such claim retain the lien securing such claim until the
>     earlier of—
>     (aa) the payment of the underlying debt determined under nonbankruptcy
>     law; or
>     (bb) discharge under section 1328; and
>     (II) if the case under this chapter is dismissed or converted without
>     completion of the plan, such lien shall also be retained by such holder to
>     the extent recognized by applicable nonbankruptcy law

11 U.S.C. § 1325(a)(5).

While Bankruptcy Code § 1322(b)(2) permits a Chapter 13 debtor to modify the rights of holders of secured claims pursuant to a plan, claims "secured only by a security interest in real property that is the debtor's principal residence" are excepted from this category. As a result, a mortgagee with a security interest in the debtor's principal residence can demand payment in full on its secured claim in the plan. 11 U.S.C. § 1322(b)(2). In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed.2d 288 (1993) (*citing* 11 U.S.C. § 1322), the Supreme Court ruled that a Chapter 13 debtor is not permitted to modify the rights of the holder of an undersecured lien on the debtor's principal residence, thereby prohibiting bifurcated treatment of such claim in a Chapter 13 plan. In resolving a division among the Circuit courts, the Supreme Court held that so long as there is some value in the collateral to which the lien could attach, the entire lien was protected under the anti-modification provisions of Bankruptcy Code § 1322(b)(2). *Id*., 508 U.S. at 328-32, 113 S.Ct. 2106. Following *Nobelman,* the Second Circuit, and every circuit court of appeals and bankruptcy appellate panel considering this issue, permit Chapter 13 debtors to modify the rights of a wholly unsecured mortgagee secured solely by the debtors' principal residence. *Pond v. Farm Specialist Realty (In re Pond),* 252 F.3d 122, 126 (2d Cir. 2001).[3] The rationale adopted by the Second Circuit is that "the antimodification exception of Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the debtor's residence retains enough value - after accounting for other encumbrances that have

---

[3]*See Lane v. W. Interstate Bancorp (In re Lane),* 280 F.3d 663, 665-669 (6th Cir. 2002); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1359-60 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n., et al (In re Bartee)*, 212 F.3d 277, 292 (5th Cir. 2000); *McDonald v. Master Fin., Inc. (In re McDonald),* 205 F.3d 606, 615 (3d Cir. 2000); and BAP cases *Domestic Bank v. Mann (In re Mann),* 249 B.R. 831, 838 (1st Cir. BAP 2000); and *Lam v. Investors Thrift, et al (In re Lam),* 211 B.R. 36, 38-41 (9th Cir. BAP 1997).

priority over the lien - so that the lien is at least partially secured under Section 506(a)." *Id.* at 126. As a result, a Chapter 13 debtor within the Second Circuit may propose a plan that modifies the rights of creditors holding junior liens against the debtor's residence where there is no value in the collateral over and above the senior mortgagee's claim, as is the case with the Defendant. Section 1322(b) specifies that the modification must take place in the plan, and requires a determination that the value of the collateral is less than the amount of the senior mortgage lien pursuant to Bankruptcy Code § 506(a).

While bankruptcy courts agree that Bankruptcy Code § 1322(b)(2) plays an essential role in this process, courts are divided as to how and when junior lien avoidance, more commonly referred to "lien stripping," takes place. In the instant case, the Debtors seek to fix the defining event as the date of entry of judgment by default in this adversary proceeding, which occurs prior to confirmation of the plan in this Court. Because the Debtors choose entry of judgment by default in this adversary proceeding as the effective date of the lien avoidance, Debtors are implicitly advocating that the plan process is irrelevant to the lien avoidance. While the Court understands that the Debtors' approach is based on their assumption that avoidance of a wholly unsecured mortgage lien in a Chapter 13 context should operate just as lien avoidance does under Bankruptcy Code § 522(f), their assumption is flawed. First, Bankruptcy Code § 522(f) clearly states that "the debtor may avoid the fixing of a lien" which impairs the debtor's homestead exemption, thus giving a debtor the authority to seek avoidance of the lien outside the plan process. Second, Bankruptcy Code § 349(f)(b)(1)(B) provides that upon dismissal of the Chapter 7 case, the lien avoided under § 522(f) is "reinstated." A lien cannot be reinstated unless it is first avoided, which compels a finding that the lien is actually avoided upon entry of

the order avoiding the lien.  In contrast, Bankruptcy Code § 1322(b)(2) only permits modification of the creditor's rights in the plan process.  As a result, any attempt to use the adversary proceeding to value a claim as unsecured and to avoid the lien upon entry of a judgment is incorrect and runs afoul of *Dewsnup* and its progeny.  *Dewsnup* teaches us that §§ 506(a) and (d) do not avoid liens, and these sections have no power standing alone to modify the rights conferred upon mortgage lien holders under applicable state law.

Having considered and rejected the Debtor's request, the Court is left with the task of determining when the wholly unsecured mortgage lien of the Defendants is removed.  Courts considering this issue generally fall within two schools of thought.  According to one position, which has been referred to as the majority position, the lien is removed only upon entry of the debtor's discharge.  *See In re Gerardin*, 447 B.R. 342 (Bankr. S.D. Fla. 2011); *In re Erdmann,* 446 B.R. 861 (Bankr. N.D. Ill. 2011); *In re Victorio*, ___ B.R. ___, 2011 WL 2746054 (Bankr. S.D. Cal. 2011); *In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010); *In re Lindskog*, 451 B.R. 863 (Bankr. E.D. Wis. 2011); *In re Mendoza*, No. 09-22395 HRT, 2010 WL 736834 (Bankr. D. Col. Jan. 21, 2010); *In re Blosser*, No. 07-28223-svk, 2009 WL 1064455 (Bankr. E.D. Wis. Apr. 15, 2009) and *In re Jarvis*, 390 B.R. 600, 604-06 (Bankr. C.D. Ill. 2008).  A growing number of courts have taken the opposite position, finding that the lien is removed upon completion of the plan payments in the Chapter 13 case, regardless of whether the debtor is entitled to a discharge. *See In re Fisette,* ___ B.R. ___, 2011 WL 3795138 (8th Cir. BAP. Aug. 29, 2011); *In re Davis,* No. 09-26768-WIL*,* 2011 WL 1237638 (Bankr. D. Md. Mar. 30, 2011); *In re Jennings,* Nos. 11-50570-CRM, 10-88514-CRM, 2011 WL 2909888 (Bankr. N.D. Ga. Jul. 11, 2011); *In re Okosisi*, 451 B.R. 90 (Bankr. D. Nev. 2011); *In re Fair*, 450 B.R. 853 (E.D. Wis. 2011); *In re Waterman,*

447 B.R. 324 (Bankr. D. Colo. 2011); *In re Tran,* 431 B.R. 230 (Bankr. N.D. Cal. 2010); and *In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010).

Resolution of this issue in this case merely changes the timing of when the Defendant's lien is removed. *See* 11 U.S.C. § 1328(a). However, in cases where a Chapter 13 debtor is ineligible to receive a discharge, determining what triggers removal of the junior lien has a significant effect. For example, in so-called "Chapter 20" cases, where a debtor received a Chapter 7 discharge within four years of the date of entry of an order for relief in a Chapter 13 case, a debtor is ineligible to receive a discharge in the Chapter 13 case pursuant to 11 U.S.C. § 1328(f)(1).[4] Chapter 13 debtors whose cases are closed without entry of the discharge for failure to obtain a personal financial management certificate pursuant to Bankruptcy Code § 727(a)(11) could also be affected by a resolution of this issue.

*Analysis*

This Court finds that the Defendant's lien is not removed until entry of the debtor's discharge. While § 506(a) operates to classify the Defendant's "claim" as unsecured, which exempts the claim from the anti-modification provisions set forth in § 1322(b), the lien against the Property exists as of the date the Debtors' case was filed, and remains a lien against the Property as of the date of confirmation of the Plan. This is true in what is commonly called a Chapter 20 case as well, where the *in personam* obligation of the debtor has been previously discharged, leaving only the *in rem* lien as a claim pursuant to *Johnson v. Home State,* 501 U.S.

---

[4]Bankruptcy Code § 1328(f)(1) provides in relevant part, that:
(f) . . . the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge -
    (1) in a case filed under chapter 7 - . . . of this title durilng the 4-year period preceding the date of the order for relief under this chapter.
11 U.S.C. § 1328(f)(1).

78, 111 S. Ct. 2150, 115 L.Ed.2d 66 (1991).   Sections 1325(a)(5)(B)(i)(I) and (II) were added to the Bankruptcy Code pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  These provisions clarified that, regardless of the treatment afforded in a Chapter 13 plan, a secured creditor retains its lien until the entry of the discharge.  As a result,  a Chapter 13 debtor could not argue that upon conversion or dismissal of their case, the lien avoidance had already taken place.  *In re Fenn,* 428 B.R. at 502.   Specifically, section 1325(a)(5)(B)(i)(II) provides for retention of a lien securing a claim if the case is converted or dismissed "without completion of the plan" and § 1325(a)(5)(B)(i)(I) expressly provides that the holder of an allowed secured claim retains its lien until the earlier of payment of the claim in full pursuant to applicable nonbankruptcy law, or entry of the discharge. The tension created by these sections is, if the Defendant's claim is "unsecured" under § 506(a), how can the provisions of § 1325(a)(5) apply as this section covers only "allowed secured claims"?

The *Fenn* court effectively resolved this tension by finding that "§ 506(a) allows the bifurcation of the rights of holders of secured claims, rather than the modification of a secured claim.  It does not change the rights immediately allowing the permanent modification of a secured claim to unsecured status, as strip off or avoidance occurs at discharge."  *In re Fenn*, 428 B.R. at 502.  Furthermore, "sections 1322(b)(2), 1325(a)(5) and 506(d) can be reconciled to mean that section 506(d) allows lien avoidance where the claim secured by the lien has been disallowed, and that the specific provisions of § 1325(a)(5) govern the subject of lien retention in the context of chapter 13 plans."  *Id.*   Because § 1325(a)(5) governs lien retention in Chapter 13 cases, a discharge is required pursuant to subsection (B)(i)(I) before the lien is removed.  The *Gerardin* court cited *Fenn* with approval, finding that a "discharge under Chapter 13 is a

necessary condition for stripping off an unsecured lien" based on the express language of § 1325(a)(5). *In re Gerardin*, 447 B.R. at 350. This Court agrees with the reasoning of the *Fenn* and *Gerardin* courts, and finds that to hold otherwise would vest lien avoidance power in § 506(a), which does not exist. If § 506(a) were capable of avoiding liens, then lien avoidance could be accomplished in a Chapter 7 case. This is not the case, and to elevate § 506(a) as such would run afoul of *Dewsnup*.

Other sections of the Bankruptcy Code support this interpretation that the lien securing the Defendant's claim remains secured, despite the classification process of § 506(a). For example, if a Chapter 13 case is converted to a case under Chapter 7, creditors holding completely unsecured junior mortgage liens retain their secured status notwithstanding the confirmation of a plan which provides for treatment of their claim as unsecured, unless such creditor has received payment of its claim in full pursuant to applicable nonbankruptcy law. Section 348(f)(1)(C) provides:

> (C) with respect to cases converted from chapter 13 -
>
> (1) the claim of any creditor holding security as of the date of the filing of the petition shall continue to be secured by that security unless the full amount of such claim determined under applicable nonbankruptcy law has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of the case under chapter 13: . . .

11 U.S.C. § 348(f)(1)(C). It is clear from this section, which was added to the Bankruptcy Code pursuant to BAPCPA, that claims secured by liens on property, even if the value of the property is insufficient to collateralize the debt, do not disappear upon the filing of the petition, or upon entry of an order of confirmation, or upon completion of plan payments. Only payment in full

under non-bankruptcy law, entry of the discharge or surrender of the collateral to the creditor extinguishes the lien.

The *Gerardin* court correctly summarized the interplay between §§ 1325(a) (5) and 348 as follows:

> The language added to § 1325(a)(5) in BAPCPA is consistent with and works in tandem with § 348 by clarifying that the lien existing on the filing date remains in place until the debt is discharged or paid in full, § 1325(a)(5)(B)(i)(I), and by specifically providing that the lien on the petition date remains intact if the case is dismissed or converted. 11 U.S.C. § 1325(a)(5)(B)(i)(II). Thus, there is no doubt that Congress fully intended for lien strips, whether strip downs or strip offs, to be dealt with under § 1325(a)(5).

447 B.R. at 351.

This interpretation does not contradict the Second Circuit's holding in *In re Pond*, *supra*. The Second Circuit concluded that a wholly unsecured claim "as defined under Section 506(a), is not protected under the antimodification exception of Section 1322(b)(2)." *In re Pond*, 252 F.3d at 126. Because the holder of a wholly unsecured lien under § 506(a) is not the holder of a "claim secured only by a security interest in . . . the [plaintiff's] principal residence", the antimodification exception contained in § 1322 was inapplicable. *Id*. at 127. The Second Circuit was not called on to determine when lien avoidance could take place in a Chapter 13 case, but only to decide whether it could take place at all. In making its finding, the Second Circuit recognized that the plan is the vehicle which permits the lien to be removed. *Id.* at 127.

This approach is also consistent with *Dewsnup,* in which the Supreme Court recognized that Congress did not intend to grant to the debtor the right to declare an allowed claim as "unsecured" solely by virtue of § 506(a). 502 U.S. at 419, 112 S. Ct. at 779. The Supreme Court in *Nobelman* again acknowledged Congress's intent to favor residential mortgagees by ruling

Page 14 of 16

that the valuation of a claim as partially unsecured under § 506(a) "does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." 508 U.S. at 329, 113 S. Ct. at 2106.  As the court in *Gerardin* correctly points out, these decisions were "plainly designed to protect home lenders" and reflect the proper deference Congress has long given to such lenders.  447 B.R. at 351-352. By including these lien holders as secured creditors, regardless of how the claim is classified, Congress recognized that the lien holders are entitled to the rights given to secured creditors in the Chapter 13 plan process.  So long as the plan treats the claim by proposing a payment, the plan is confirmed, and the debtor complies with the payments and obtains a discharge, § 1325(a)(5) permits the lien to be removed.

To refer to this process as a "strip off" of a lien mischaracterizes the process that actually takes place, as it implies that the debtor is "taking" property without giving anything in return. The statutory scheme applicable in Chapter 13 cases actually creates a *quid pro quo* in that the debtor must comply with the terms of the plan, and the lien remains on the property until the payments under the plan are completed.  The lien is removed only upon satisfaction of the plan obligations and entry of the discharge pursuant to § 1325(a)(5).

*Conclusion*

For the foregoing reasons, the Debtors' request to avoid the Defendant's lien on the Property upon entry of judgment by default in this adversary proceeding is denied. The Defendant's mortgage lien may not be removed from the Property unless and until the Debtors receive a discharge. An order consistent with this Memorandum Decision shall be entered forthwith.

Dated: Central Islip, New York
       September 19, 2011                              By: */s/ **Robert E. Grossman***
                                                       Robert E. Grossman
                                                       United States Bankruptcy Judge